FILED
James J. Waldron

MAR 2 - 2016

U.S. Bankruptcy Court
Newark, New Jersey
BY _____ Deputy

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | |
| **JOHN A. FEDELE,** | Case No.:    14-17103 (RG) |
| Debtor. | |
| **NATIONWIDE CAPITAL FUNDING, INC.,** | |
| Plaintiff, | Adv. Pro. No.:  14-01618 (RG) |
| vs. | |
| **JOHN A. FEDELE,** | |
| Defendant. | |

**OPINION**

**APPEARANCES:**

WILENTZ, GOLDMAN & SPITZER, P.A.
David H. Stein, Esq.
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey  07095
*Counsel for Plaintiff,*
*Nationwide Capital Funding, Inc.*


NORGAARD O'BOYLE
George M. Pangis, Esq.
184 Grand Avenue
Englewood, New Jersey  07631
*Counsel for Defendant,*
*John A. Fedele*

**THE HONORABLE JOHN K. SHERWOOD, BANKRUPTCY JUDGE**

Nationwide Capital Funding, Inc. ("Nationwide") moves for summary judgment on its adversary complaint against chapter 7 debtor John A. Fedele (the "Debtor"). The complaint seeks determinations that: (i) a debt in the amount of $1,598,680.61 based on funds advanced by Nationwide to the Debtor's business pursuant to a factoring agreement is nondischargeable under section 523 of the Bankruptcy Code because it was induced by the Debtor's fraud and (ii) the Debtor should be denied a discharge under section 727 due to his failure to disclose interests in certain entities in his bankruptcy petition.

The Debtor opposes Nationwide's motion but does not contest the allegations of fraud. Rather, the Debtor filed a cross-motion for summary judgment asserting that Nationwide is precluded from filing a nondischargeability action against him in this Court under the New Jersey Business Corporation Act, N.J.S.A. 14A:1-1, *et seq.*, which prohibits foreign corporations doing business in the state from bringing suit in New Jersey courts unless they have obtained the requisite certificate of authority.

For the reasons set forth below, the Court will deny the Debtor's cross-motion and grant partial summary judgment on Nationwide's motion.

## JURISDICTION

The Court has jurisdiction over the motions pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## FACTS AND PROCEDURAL HISTORY

In 2006, the Debtor founded Star Products, LLC ("Star Products"), a New Jersey janitorial supply company of which he was the sole shareholder and sole employee.[1]  In June 2010, Star Products and Nationwide, a Texas corporation located in Corpus Christi, Texas, entered into a commercial factoring and security agreement (the "Agreement").[2]  Under the Agreement, Nationwide would purchase accounts receivable from Star Products and assume responsibility for collection, holding back a certain percentage of each receivable as collateral until the entire invoice was collected.[3]  If a receivable was not paid within 90 days, Star Products had the obligation to repurchase it.[4]  The Debtor and his wife, Cathy Van Rheenen,[5] personally guaranteed the payment and full performance of Star Products' obligations under the Agreement.[6]

The Agreement included the following representations and warranties:

- "Each account offered for sale to Nationwide is an accurate and undisputed statement of indebtedness . . . for a certain sum which is due and payable in thirty days or less, or within such time as agreed to, in writing."

- "Each account offered for sale to Nationwide is an accurate statement of a bona fide sale, deliver (sic) and acceptance of merchandise or performance of service."

- Star Products "does not own, control or exercise dominion over, in any way whatsoever, the business of any customer/account debtor to be factored by [Star Products] to Nationwide."

- "All financial records, statements, books or other documents shown to Nationwide . . . are true and accurate."

---

[1] (Certification of John A. Fedele at ¶¶ 4-5 ("Fedele Cert."), ECF No. 41-12).
[2] (*See* Agreement, ECF No. 39-24).
[3] (Fedele Cert. at ¶¶ 6-7).
[4] (Agreement at ¶ 34).
[5] Van Rheenen is a debtor in a separate case currently pending in the District of New Jersey. (Case No. 14-25176).
[6] (Agreement at 4).

4

- Star Products "will hold in trust and safe keeping, as the property of Nationwide, and immediately turn over to Nationwide, the identical check or other form of payment received by [Star Products], whenever any payment on an account purchased by Nationwide comes into [Star Products]'s possession."[7]

Notwithstanding these representations, the Debtor does not dispute that many of the receivables sold to Nationwide were fabricated. Some customers that purportedly purchased products from Star Products in fact had no sales or were non-operating.[8] The Debtor admitted at his deposition that he or Van Rheenen founded or controlled the following account debtors, each of which had significant outstanding account balances when Star Products ceased operations in 2012:

| Account | Outstanding Balance[9] | Fedele Dep. Citation |
|---|---|---|
| CVR Company LLC/Operational Management | $146,320.22 | 45:25-45:6; 74:7-9; 186:6-11 |
| Faithful Productions | $135,842.75 | 45:8-10; 56:20-23; 342:14-22 |
| Italian American Repertory Company | $130,890.20 | 40:15-41:24; 45:25-46:6; 187:16-22; 352:9-13 |
| Italian American Repertory Company - Working Theater | $125,575.00 | 187:16-188:13; 357:2-18 |
| Operational Management Company/CVR | $137,462.60 | 58:2-11; 186:12-15; 368:5-12 |

Although these entities operated (to the extent they operated at all) out of the Debtor's residence or that of his mother, the Debtor listed various UPS stores or Rent-a-Box mail drop locations as their business addresses to further the appearance of legitimacy.[10] It appears the Debtor also

---

[7] (*Id.* at ¶¶ 14-17, 36).
[8] (*See, e.g.,* Deposition of John A. Fedele ("Fedele Dep.") at 56:20-23, Apr. 17, 2015, ECF No. 39-3) (Mr. Stein: "Okay. Now you indicated that Faithful Productions had no ventures or sales; is that correct?" Mr. Fedele: "Right."); (*id.* at 53:2-8) (Mr. Stein: "And CVR Company, it booked jobs for people, too?" Mr. Fedele: "No." Mr. Stein: "It didn't do any business?" Mr. Fedele: "No." Mr. Stein: "Did it ever do any business?" Mr. Fedele: "No."); (*id.* at 57:5-17 (Mr. Stein: "Did Operational Management have any bank accounts?" Mr. Fedele: "No." Mr. Stein: "Did it have any sales?" Mr. Fedele: "No.").
[9] (*See* Certification of Eddie Thornton ("Thornton Cert."), Ex. B, ECF No. 39-23).
[10] (*See, e.g.,* Fedele Dep. at 44:1-17; 350:25-351:18); (*id.* at 102:8-14) (Mr. Stein: "And you used a P.O. Box for these accounts so that it gave the appearance that these companies had independent bona fide business addresses. Is that correct?" Mr. Fedele: "Yes." Mr. Stein: "And, in fact, that was a lie; is that correct? They didn't have any bona fide business addresses because you used a moniker of a fictitious location using that P.O. Box. Is that correct?"

created fake email accounts to correspond with Nationwide and confirm that Star Products' sales and delivery of products were bona fide.    For instance, the Debtor admitted setting up a fake email account supposedly belonging to an employee of Faithful Productions to correspond with Nationwide.[11]  And even though he was the only employee of CVR Company LLC/Operational Management, the Debtor was unable to explain why a person by the name of "Connie Ray" engaged in email and telephone correspondence with Nationwide to confirm its receipt of goods from Star Products.[12]  Furthermore, when asked to verify the validity of the following accounts, the Debtor either could not recall any details about contact persons at each account or invoked his Fifth Amendment right against self-incrimination:

| Account | Outstanding Balance | Fedele Dep. Citation |
|---|---|---|
| Dante Aligheri Society | $122,518.60 | 329:5-331:20 |
| Delverdi Melinas Italia Verdi | $143,879.17 | 186:16-187:15; 331:21-332:7; 333:9-11; 334:7-336:6 |
| Italian Cultural Society | $123,340.87 | 358:19-360:4 |
| Italic Studies | $128,616.85 | 362:2-6; 363:3-16 |

    Finally, even with respect to many of Star Products' apparently legitimate accounts, the Debtor misled Nationwide by fabricating purchase orders, significantly overstating amounts of goods sold, or failing to advise Nationwide when receivables it had purchased were not collectible because the sale never occurred or the products were returned.[13]  As to these entities, the following balances were outstanding when Star Products ceased operations:

---

Mr. Fedele: "Yes.").
[11] (*Id.* at 121:3-25) (Mr. Stein: "Did you correspond to my client using an AOL account confirming that Faithful Products' accounts receivable were valid and bona fide?" Mr. Fedele: "Yes." Mr. Stein: "Did you do it under someone else's name?" Mr. Fedele: "I might have." . . . Mr. Stein: "Basically what you're doing is confirming the accuracy of an account using an e-mail account under somebody else's name; is that correct?" Mr. Fedele: "I believe so." Mr. Stein: "Did you think that was wrong?"  Mr. Fedele: "Well, yes.").
[12] (*Id.* at 318:4-15; 319:21-321:20; 324:3-326:7).
[13] (*See, e.g., id.* at 183:7-184:15; 191:22-192:5).

| Account | Outstanding Balance | Fedele Dep. Citation |
|---|---|---|
| American Resource Technology | $49,227.35 | 246:7-247:5 |
| Blue Line / RBR Productions | $68,360.23 | 189:5-11; 307:23-309:2 |
| Budget Lighting | $48,780.75 | 306:12-20 |
| Lago Building Services | $39,570.17 | 188:17-22 |

In July 2013, Nationwide sued Star Products, the Debtor and Van Rheenen in the Superior Court of New Jersey, Law Division, Bergen County, Docket No. BERL-5392-13, seeking to recover $1,554,598.81 in advances made to Star Products.[14] Although the Debtor and Star Products answered the complaint, the action was stayed as to the Debtor and Van Rheenen after they filed individual chapter 7 bankruptcy petitions. Nationwide's motion for summary judgment against Star Products was not opposed and the state court entered judgment against Star Products in the amount of $1,554,598.81 plus costs.[15]

The Debtor filed his bankruptcy petition on April 10, 2014. Nationwide filed this adversary proceeding and moved for summary judgment in November 2015.[16] Shortly thereafter, the Debtor filed his cross-motion for summary judgment and relies on his cross-motion as his opposition to Nationwide's summary judgment motion.[17]

Although the Debtor's answer to the complaint asserts that he did not commit fraud, his cross-motion for summary judgment does not dispute any of the facts alleged by Nationwide in support of its claims and he does not address the merits of the section 523 or section 727 claims. At oral argument, counsel for the Debtor confirmed that the Debtor's opposition and cross-motion were based entirely on his position that Nationwide lacked the capacity to bring a nondischargeability action in this Court due to its failure to register as a foreign corporation in New Jersey.

---

[14] (*See* Complaint, Thornton Cert., Ex. C, ECF No. 39-26).
[15] (*See* Order, Thornton Cert. Ex. E, ECF No. 39-28).
[16] (Mot. for Summ. J., ECF No. 39)
[17] (Cross-Mot. for Summ. J., ECF No. 41).

## DISCUSSION

### I.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[18] A party opposing a motion for summary judgment must set forth specific facts showing a genuine dispute as to a material fact.[19] An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[20] In determining whether there is a genuine issue of material fact, the court must construe all facts and inferences in a light most favorable to the non-moving party.[21] If a party does not address another party's assertion of fact, the court may "consider the fact undisputed for the purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[22]

### II.    Nationwide's Right to Bring Suit in the Bankruptcy Court

The Debtor argues that Nationwide cannot bring this nondischargeability action due to its failure to register in New Jersey as a foreign corporation. Section 14A:13-11(1) of the New Jersey Business Corporation Act, the state's "closed-door" statute, prohibits unregistered foreign

---

[18] Fed. R. Civ. P. 56(c). Federal Rule of Civil Procedure 56 is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. *See* Fed. R. Bankr. P. 7056.

[19] *See* Fed. R. Civ. P. 56(a), (c)(1).

[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[21] *Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

[22] Fed. R. Civ. P. 56(e).

corporations from suing in state court.[23]    It is undisputed that Nationwide is a foreign corporation

that has not obtained a certificate of authority in New Jersey.  According to the Debtor, this means

that Nationwide cannot bring nondischargeability actions under sections 523 and 727 in New

Jersey bankruptcy courts.

The Debtor relies on § 502(b)(1) of the Bankruptcy Code, which disallows a claim to the

extent "such claim is unenforceable against the debtor and property of the debtor, under any

agreement or applicable law for a reason other than because such claim is contingent or

unmatured." 11 U.S.C. § 502(b)(1).  Since the substantive law that governs the existence or

validity of a claim is state law,[24] the Debtor argues that N.J.S.A. 14A:13-11(1) prevents

unregistered foreign corporations from bringing any claims in New Jersey bankruptcy court.

But, the Debtor does not question the *substance* of Nationwide's claim.  Rather, he

challenges the plaintiff's ability to enforce its substantive rights in this court, which is more a

question of jurisdiction and procedural law.  The jurisdiction granted by Congress to the

bankruptcy courts to hear and determine claims of creditors against debtors is quite broad.[25]  In

fact, once a debtor files for bankruptcy protection, a creditor has no choice but to pursue its

claims in the bankruptcy court, as proceedings in other courts are stayed under § 362(a) of the

Bankruptcy Code.  Indeed, proceedings to determine the validity of claims, determinations as to

the dischargeability of certain debts, and objections to discharge are under federal bankruptcy

---

[23] N.J.S.A. 14A:13-11(1) ("No foreign corporation transacting business in this State without a certificate of authority shall maintain any action or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority.").

[24] *In re Lampe*, 665 F.3d 506, 515 (3d Cir. 2011) ("The basic federal rule in bankruptcy is that state law governs the substance of claims, Congress generally having left the determination of property rights in the assets of a bankrupt's estate to state law.") (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951, 1955, 147 L. Ed. 2d 13 (2000)); *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 444 (2007) ("Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code. That principle requires bankruptcy courts to consult state law in determining the validity of most claims.") (internal citation and quotation marks omitted).

[25] *In re Collins*, 173 F.3d 924, 929 (4th Cir. 1999) ("Once a bankruptcy petition is filed, the bankruptcy court has jurisdiction over the case with authority to resolve all claims against the estate and discharge the debtor.").

jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. Thus, the bankruptcy court's jurisdiction over disputes concerning the allowance or disallowance of claims against a debtor is a matter of federal law, and a state statute governing access to New Jersey courts should not limit the bankruptcy court's jurisdiction over a substantively valid claim.

Other bankruptcy courts have reached this conclusion. In *Fantastik v. Brown (In re Fantastik)*, 49 B.R. 510, 511 (Bankr D. Nev. 1985), the court rejected the argument that Nevada's "closed-door" statute applied in bankruptcy court to preclude a plaintiff from establishing a claim against a debtor. The debtor in *Fantastik*, a Nevada corporation, moved to dismiss the plaintiff's complaint on the ground that the plaintiff, an Oklahoma corporation, lacked the capacity to commence the adversary proceeding under Nevada's closed-door statute because it was not authorized to do business in the state. The court held that Federal Rule of Civil Procedure 17(b), not the Nevada statute, governed the plaintiff's capacity to bring claims against the debtor in bankruptcy court.[26] Rule 17(b) provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Fed. R. Civ. P. 17(b). The Court recognized that Rule 17(b) is qualified by the Erie Doctrine, which requires a federal court sitting in diversity jurisdiction to apply the law of the state where it sits.[27] But the court noted that the Erie Doctrine does not govern the allowance of claims in bankruptcy because such matters are core proceedings under 28 U.S.C. § 157 (and thus the bankruptcy court is not exercising diversity jurisdiction). Also, the forum shopping concerns that underlie the Erie Doctrine are not present in bankruptcy since there is only one forum in which to bring claims.[28] The court noted: "[i]t would be patently inequitable to deny a creditor access to

---

[26] *Fantastik*, 49 B.R. at 511.
[27] *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487 (1938).
[28] *Fantastik*, 49 B.R. at 512; *see also Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 162-63 (1946) ("In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does

the bankruptcy court to adjudicate a claim simply because that creditor could not bring that action in the courts of the state in which the bankruptcy court sits."[29]

Similarly, in *In re Cochrane*, 273 B.R. 272 (Bankr. M.D. Fla. 2001), the debtor argued that the plaintiff, an Ontario limited partnership, could not bring a nondischargeability complaint against him because it was not authorized to do business in Florida.    The Court held that the plaintiff had the capacity to sue in bankruptcy court because:

> [t]he suit pending before this Court is an enforcement of a right granted by Congress to a creditor to obtain a determination of the dischargeability of a particular debt.    The jurisdiction to make such a determination is exclusively within the competence of the Bankruptcy Court where the case filed by the Debtor is pending. For these reasons, it is quite evident that while [the plaintiff] may not have the capacity to pursue a legal action in courts of this state, it certainly has an absolute right to do so in Federal Bankruptcy Court.[30]

The Court agrees with the analysis in *Fantastik* and *Cochrane*.    Once the Debtor decided to file bankruptcy in New Jersey, the bankruptcy court became the only court with the power to adjudicate claims against the Debtor.    While the bankruptcy court will apply state substantive law to evaluate the merits of certain claims, N.J.S.A. 14A:13-11(1) does not address the substance of the claims of Nationwide against the Debtor.    Accordingly, Nationwide's right to assert a claim against the Debtor in bankruptcy court is preserved.    Even if N.J.S.A. 14A:13-11(1) would preclude Nationwide from bringing a claim against the Debtor in New Jersey state court, it has a federal right to assert its nondischargeability complaint under the Bankruptcy Code.    Since the Debtor does not contest that Nationwide has the capacity to sue under the laws

---

not apply the law of the state where it sits.    *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, has no such implication. That case decided that a federal district court acquiring jurisdiction because of diversity of citizenship should adjudicate controversies as if it were only another state court.").

[29] *Fantastik*, 49 B.R. at 512; *see also In re Spanish Trails Lanes, Inc.*, 16 B.R. 304, 306 (Bankr. D. Ariz. 1981).

[30] *In re Cochrane*, 273 B.R. 272, 277 (Bankr. M.D. Fla. 2001); *see also In re Flex Fin. Holding Co.*, 518 B.R. 891, 895 (Bankr. D. Kan. 2014).

of Texas, where it is organized, it may file a nondischargeability complaint under Rule 17.  For

these reasons, the Debtor's cross-motion is denied.

*          *          *          *          *

This conclusion makes it unnecessary to decide whether Nationwide was a foreign

corporation "transacting business" in New Jersey—a finding that is required for N.J.S.A.

14A:13-11(1)'s "closed door" provision to apply.  In *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366

U.S. 276, 278-79 (1961), the Supreme Court held that a foreign corporation whose only contact

with New Jersey involved interstate transactions could not be barred from using New Jersey

courts, whereas a corporation that was engaged in intrastate or localized activities could be:

> [i]t is well established that New Jersey cannot require [a foreign
> corporation] to get a certificate of authority to do business in the
> State if its participation in [its] trade is limited to its wholly
> interstate sales to New Jersey wholesalers . . . On the other hand, it
> is equally well settled that if [the foreign corporation] is engaged in
> intrastate as well as interstate aspects of the . . . business, the State
> can require it to get a certificate of authority to do business.[31]

In considering whether a foreign corporation's business activity constitutes intrastate

commerce, courts look to the firm's solicitation of consumers or other businesses in New Jersey

and the extent to which it localized any portion of its business within the state.[32]  Other relevant

factors include whether the corporation has a physical presence, telephone listings, or active

employees in New Jersey, and whether traveling salespersons may enter into contracts in the

state without having to forward them to a home office.[33]

Here, Nationwide asserts that it was not engaged in intrastate commerce because its

activity in New Jersey was not specific to businesses within the state.  Nationwide's sole place

---

[31] *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 278-79 (1961).
[32] *See Materials Research Corp. v. Metron*, 64 N.J. 74, 80-81 (1973).
[33] *Id.*

of business is its corporate office in Texas.[34]  It has no employees, agents, or business brokers in New Jersey and none of its representatives ever personally met with the Debtor or appeared at any place where Star Products conducted business in New Jersey.  All of Nationwide's business with Star Products was conducted remotely by way of telephone, fax, mail, email or the internet.[35]  Nationwide does not advertise in New Jersey or engage in targeted solicitation of local New Jersey businesses and obtained its account with Star Products through a broker located in Georgia.  In the past five or six years, Star Products was Nationwide's only client in the state.[36]

Based on these facts—which are, for the most part, undisputed—it appears that Nationwide's argument that N.J.S.A. 14A:13-11(1) does not apply because it did not transact intrastate business in New Jersey has some merit.  But, since this question may involve disputed facts and the Court has determined that Nationwide has the capacity to bring its claims on other grounds, the Court will not grant summary judgment to Nationwide on this issue.

III.    **Nationwide's Claims Under 11 U.S.C. § 523**

Counts one through three of the complaint allege that the debt to Nationwide is nondischargeable pursuant to sections 523(a)(2)(A), 523(a)(4), and 523(a)(6).

A.      **11 U.S.C. § 523(a)(2)(A)**

Nationwide asserts that its claim is nondischargeable under section 523(a)(2)(A) because its purchases were induced by the Debtor's fraudulent misrepresentations regarding the various account debtors.   11 U.S.C. § 523(a)(2)(A) renders nondischargeable any debt obtained by false

---

[34] (Supplemental Certification of Eddie Thornton ("Suppl. Thornton Cert.") at ¶ 2, ECF No. 47).
[35] (*Id.* at ¶¶ 3-7).
[36] (*Id.* at ¶¶ 2, 8); (Thornton Cert. at ¶ 10).

pretenses, a false representation, or actual fraud.  To prevail on a claim under this section a creditor must prove the following elements:

> (1) the debtor obtained money, property or services through a material misrepresentation;
>
> (2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth;
>
> (3) the debtor intended to deceive the creditor;
>
> (4) the creditor reasonably relied on the debtor's false representations; and
>
> (5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.[37]

Here, the Debtor does not contest any of the facts underlying Nationwide's fraud allegations and the evidence in the record demonstrates that all of the above elements are present. Star Products obtained funds from Nationwide due to the Debtor's material misrepresentations regarding Star Products' account debtors.  The Debtor's deposition testimony makes it clear that the representations in the Agreement regarding each account being an accurate statement of indebtedness based on bona fide sales and deliveries of merchandise or service were materially false, as were the representations regarding Star Products' lack of control over certain account debtors.  The falsity of these representations was not apparent and Nationwide's reliance on them was justifiable given the Debtor's efforts to perpetuate the fraud by, among other things, creating fake email accounts to correspond with Nationwide.  Finally, Nationwide clearly sustained a loss as a result of this fraud, as the Debtor admitted that Nationwide was owed at least $1.2 million dollars in connection with receivables it purchased from Star Products.[38]  Thus, Nationwide is entitled to partial summary judgment on its claim under section 523(a)(2)(A).

---

[37] *In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996).
[38] (Fedele Dep. at 124:25-125:10).

**B.    Amount of Nondischargeable Claim under § 523(a)(2)(A)**

Nationwide's total claim is based on the August 8, 2014 state court judgment against Star

Products in the amount of $1,554,598.81 plus costs.  This number is derived from business

records indicating that receivables purchased from Star Products had open balances in this amount

as of May 16, 2013.[39]  Although the Debtor offers no evidence to refute Nationwide's claim for

judgment in this amount, the Court must assess whether Nationwide's motion and supporting

materials support entry of summary judgment in this amount.[40]

Based on Nationwide's records and the Debtor's admissions, it appears that the following

receivables were sold to Nationwide based on fraudulent misrepresentations:

| Account | Outstanding Balance |
| --- | --- |
| American Resource Technology | $49,227.35 |
| Blue Line / RBR Productions | $68,360.28 |
| Budget Lighting | $48,780.75 |
| CVR Company LLC/Operational Management | $146,320.22 |
| Dante Aligheri Society | $122,518.60 |
| Delverdi Melinas Italia Verdi | $143,879.17 |
| Faithful Productions | $135,842.75 |
| Italian American Repertory Company | $130,890.20 |
| Italian American Repertory Company - Working Theater | $125,575.00 |
| Italian Cultural Society | $123,340.87 |
| Italic Studies | $128,616.85 |
| Lago Building Services | $39,570.17 |
| Operational Management Company/CVR | $137,462.60 |
| **TOTAL** | **$1,400,384.81** |

---

[39] (*See* Thornton Cert., Ex. B, ECF No. 39-23).
[40] *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) ("Rule 56 requires district courts to assess whether 'the motion and supporting materials' entitle the movant to summary judgment."); *see also* Fed. R. Civ. P. 56 Advisory Committee Notes (2010) ("Considering some facts undisputed does not of itself allow summary judgment . . . Once the court has determined the set of facts—both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply—it must determine the legal consequences of these facts and permissible inferences from them.").

With respect to amounts Nationwide claims is due based on accounts other than those mentioned above, Nationwide either did not present evidence that the receivables were sold as a result of the Debtor's fraudulent statements or failed to refute the Debtor's testimony that the receivables were based on legitimate sales.    Accordingly, Nationwide is entitled to summary judgment in the amount of $1,400,384.76 upon its section 523(a)(2)(A) claim.

### C.    11 U.S.C. § 523(a)(4)

A debt is nondischargeable under section 523(a)(4) if it arises from the debtor's fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4).    Courts have limited the scope of this section to fiduciary duties imposed by express or technical trusts.[41]    Nationwide asserts its claim against the Debtor is nondischargeable under this section because the Debtor personally collected payments from account debtors for his personal benefit rather than holding them in trust for Nationwide as required by the Agreement.[42]

To the extent the Debtor accepted payments on accounts sold to Nationwide and failed to remit them, such amounts would be nondischargeable if the Agreement was found to have created a technical trust over such funds in favor of Nationwide.    However, the only proof provided by Nationwide to support its section 523(a)(4) claim is testimony that the Debtor would occasionally collect payments on accounts sold to Nationwide.    Apparently, the Debtor would sometimes forward such payments directly to Nationwide and other times issue checks from Star Products.[43]

---

[41] *See In re Casini*, 307 B.R. 800, 817 (Bankr. D.N.J. 2004); *Matter of Angelle*, 610 F.2d 1335, 1339 (5th Cir. 1980) ("[I]mplied or constructive trusts and trusts ex maleficio are not deemed to impose fiduciary relationships under the Bankruptcy Code.").
[42] (*See* Agreement at ¶ 35) (obligating Star Products to "hold in trust and safe keeping, as the property of Nationwide, and immediately turn over to Nationwide, the identical check or other form of payment received by [Star Products], whenever any payment on an account purchased by Nationwide comes into [Star Products]'s possession.").
[43] (*See* Deposition of Ben Jackson at 40:25-43:14, Mot. for Summ. J., Ex. L, ECF No. 39-17).

Since this testimony does not demonstrate that the Debtor misappropriated funds that should have been held in trust for Nationwide, summary judgment on the section 523(a)(4) claim is denied.

### D.    11 U.S.C. § 523(a)(6)

Nationwide argues that its claim against the Debtor is nondischargeable under section 523(a)(2)(6) because the Debtor's fraud was deliberate and injury was substantially certain to occur.  Section 523(a)(6) renders nondischargeable any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  Debts incurred through negligent or reckless conduct do not fall under this section and a debt will only be nondischargeable where the Debtor actually intended to injure the creditor.[44]

While the Debtor acknowledged that his conduct was wrong, and Nationwide has proven that the Debtor's conduct was fraudulent, Nationwide has not shown that the Debtor necessarily intended to injure Nationwide or its property.  Accordingly, summary judgment on this claim is denied.

### IV.    Nationwide's Claims Under 11 U.S.C. § 727

The complaint also alleges that the Debtor should be denied a discharge under sections 727(a)(2)(A), (a)(3), (a)(4), and (a)(7).  Nationwide claims that the Debtor fraudulently failed to disclose his interests in certain business entities that he either owned or controlled.  Because this was a concealment of assets by the Debtor, Nationwide argues that the chapter 7 bankruptcy discharge should be denied.

---

[44]*In re Schlessinger*, 208 F. App'x 131, 134 (3d Cir. 2006) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998)).

### A.    11 U.S.C. §§ 727(a)(2)(A)

Section 727(a)(2)(A) provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
>> (A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A).   The elements of a claim under this section are: (1) the debtor transferred, removed, or concealed property; (2) the property belonged to the debtor; (3) the act occurred within one year of the filing of the petition; and (4) the debtor intended to hinder, delay, and defraud a creditor.[45]   To conceal under this section has been defined as to "secrete or hide away" or to "prevent the discovery of or to withhold knowledge of."[46]   Nationwide asserts that all of these elements have been met.

At his deposition, the Debtor explained that he did not list these entities because he believed that they were worthless.[47]   Nationwide has likewise asserted that the Debtor's interests in these entities were of little or no value.   Thus, there is an issue of fact as to whether the nondisclosure of these interests was an attempt to conceal property from creditors with fraudulent intent.   Accordingly, summary judgment on the section 727(a)(2)(A) claim is denied.

---

[45] *In re von Kiel*, 550 Fed. Appx. 105, 108 (3d Cir. 2013).
[46] *United States v. Schireson*, 116 F.2d 881, 884 (3d Cir. 1940).
[47] (Fedele Dep. 250:8-25; 251:1-25; 252:1-7).

**B.    11 U.S.C. §§ 727(a)(3)**

Section 727(a)(3) provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . .
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).  To prove a claim under this section, the party objecting to discharge must show: (1) the debtor failed to maintain adequate records; and (2) this failure makes it impossible to determine the debtor's financial condition.[48]

Here, Nationwide has not alleged facts demonstrating that the debtor's failure to maintain records has made it impossible to ascertain his financial condition.  Accordingly, summary judgment under section 727(a)(3) is denied.

**C.    11 U.S.C. § 727(a)(4)**

Section 727(a)(4) provides for the denial of discharge if the debtor knowingly and fraudulently makes a false oath in connection with the bankruptcy case or withholds information from an officer of the estate.  11 U.S.C. § 727(a)(4).  A claim under this section requires proof that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently."[49]  An

---

[48] *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992).
[49] *In re Retz*, 606 F.3d 1189, 1197 (9th Cir. 2010).

oath or omission is material if it relates to the debtor's business dealings, the discovery of assets, or the existence or disposition of property.[50]

Nationwide asserts that the Debtor should be denied a discharge under this section because he made a false oath by failing to disclose his interests in the fictitious entities he allegedly owned or controlled in his bankruptcy petition.    Nationwide further asserts that the Debtor's failure to answer basic questions about these entities at his section 341(a) meeting and deposition was a further effort to conceal the fraud committed through his business dealings with these entities.    Although the Debtor admitted having ownership interests in Italian American Repertory Company, Faithful Productions, CVR/Operational Management, Operational Management Company/CVR, and another entity known as Star Graphics, Inc., he did not disclose his interests in these entities in his bankruptcy petition.[51]

Question 18 on the Debtor's statement of financial affairs asks the Debtor to list "all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within six years immediately preceding the commencement of the case."[52]    Despite the clear directive of this question, the Debtor did not list any of the various businesses that he admits he owned and controlled (other than Star Products).    Since the materiality of an omission hinges on whether it relates to the Debtor's business dealings, not whether it concerned an asset of value to the estate, Nationwide has made a prima facie case to support a denial of discharge under section 727(a)(4).[53]

---

[50] *In re Butler*, 359 B.R. 356 (B.A.P. 10th Cir. 2007).
[51] (Fedele Dep. 250:8-252:20).
[52] (*See* Petition at 43, Case No. 14-17103, ECF No. 1).
[53] *See In re Chalik*, 748 F.2d 616, 617 (11th Cir. 1984) ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious . . . Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.").

However, the Debtor defended his failure to list these entities by stating that he did not believe he was required to list them since they had no value. Even though these omissions may have been material, Nationwide has not proven for summary judgment purposes that they were made with fraudulent intent. Accordingly, summary judgment on the section 727(a)(4) claim is denied.

### D.    11 U.S.C. § 727(a)(7)

Section 727(a)(7) provides that a debtor should be denied a discharge if "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7). Nationwide does not allege any facts to support a denial of discharge under this section and therefore summary judgment on this claim is denied.

### CONCLUSION

For the reasons set forth above, the Debtor's cross-motion is denied. Partial summary judgment is granted in favor of Nationwide with respect to its claim under section 523(a)(2)(A), and the debt to Nationwide is nondischargeable in the amount of $1,400,384.76. Summary judgment is denied with respect to Nationwide's remaining claims under section 523 and section 727.

An order in conformance with this Opinion will be entered.

JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE

Dated:      March 2, 2016